IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ESTATE OF BLUMA WEINSTOCK,
ROSALEE WEINSTOCK BAMBERGER,
GITTA CHAET, and ESTHER ANCEL,        Case No. 15-cv-1391-pp

        Plaintiffs,

v.

ADT LLC d/b/a ADT SECURITY SERVICES,

        Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS (DKT. NO. 3)**

---

On November 23, 2015, the plaintiffs filed a complaint against the defendant, alleging four claims over which this court has diversity jurisdiction: breach of contract, negligence, negligent hiring, and fraudulent misrepresentation. Dkt. No. 1. On January 4, 2016, the defendant filed a motion to dismiss. Dkt. No. 3. The parties have fully briefed the motion. For the reasons stated below, the court will grant in part and deny in part the motion to dismiss.

## I.    FACTS

Bluma Weinstock passed away on December 6, 2014. Dkt. No. 1 at ¶32. This case focuses on the events leading to and surrounding her death. Though over ninety years old, Mrs. Weinstock "lived alone in her apartment." <u>Id.</u> at ¶8. As a result, her daughters, Rosalee Weinstock Bamberger, Gitta Chaet, and Esther Ancel, "urged their mother to get an emergency medical response

1

service." Id. In December of 2012, she "purchased ADT's services," and, on January 14, 2013, she "enter[ed] into a Home Health Security Services Contract with ADT." Id. at ¶11. The package included "a medical alert system" that ADT "installed at her home in Bayside, Wisconsin." Id.

Through the installed services, Mrs. Weinstock "could press the ADT alarm button whenever she felt she was in need of medical assistance." Id. at ¶15. As provided in the contract, an ADT representative then would attempt to contact Mrs. Weinstock through ADT's "Two-Way Voice" or by calling the customer's telephone number. Id. at ¶13. If, after an emergency alert, ADT could not reach Mrs. Weinstock or could not confirm that she was *not* in need of assistance, ADT would reach out to her "emergency contacts." Id. Mrs. Weinstock listed her daughters as her three emergency contracts. Id. at ¶14.

"On December 4, 2014[,] at approximately 4:29 a.m., Mrs. Weinstock triggered her ADT alarm." Id. at ¶16. The "emergency medical dispatcher" ("EMD") attempted to contact her "on the ADT two-way intercom system." Id. The EMD did not "receive any response," and "called [her] telephone which rang numerous times before Mrs. Weinstock finally answered." Id.

The parties disagree on the nature of the phone call that took place. According to the plaintiffs, Mrs. Weinstock's "speech was slurred," and "[h]er speech pattern and responses indicated that she was confused and disoriented." Id. at ¶17. The defendant argues that Mrs. Weinstock told the operator on four occasions that "she was fine." Dkt. No. 4 at 2. The conversation concluded, and "[t]he EMD did not call . . . any . . . emergency

2

contact listed in the ADT Contract, nor did the EMD call paramedics." Id. at ¶20.

About three and a half hours later, at around "8:00 a.m. on December 4, 2014, Rosalee Weinstock Bamberger called Mrs. Weinstock." Id. at ¶21. "She immediately detected slurred speech and suspected a possible stroke." Id. Rosalee went to her mother's house (the defendant contends that she arrived "about 25 minutes later," Dkt. No. 4 at 3) and, upon arrival, "noticed that the left side of Mrs. Weinstock's mouth was droopy, that she could not keep her dentures in, and that her speech was slurred." Dkt. No. 1 at ¶22. So, Ms. Bamburger called 911. The paramedics arrived, evaluated Mrs. Weinstock, and "transferred her to Columbia St. Mary's Hospital in Milwaukee, Wisconsin." Id. at ¶23.

At the hospital, the doctors discovered that Mrs. Weinstock likely had suffered a stroke, and that "she was outside the three-hour window of time advocated for" a specific, early stroke treatment. Id. at ¶¶26-27. Four days later—on Monday, December 8, 2014—her "condition worsened." Id. at ¶29. That day, the doctors performed a CT scan of Mrs. Weinstock, "which revealed that [she] had previously suffered a massive stroke." Id. at ¶30. The hospital moved Mrs. Weinstock to hospice on December 9, 2014. Id. at ¶31. She died five days later. Id. at ¶32.

The plaintiffs allege that the EMD failed to follow ADT's protocol and, as a result, did not "recognize a medical emergency in Mrs. Weinstock." Id. at ¶34. They allege that ADT has a "stroke assessment," but that the EMD did not

perform it. Id. They argue that the failure "to contact emergency medical personnel," and the failure "to contact any of Mrs. Weinstock's emergency contacts," resulted in delayed treatment and her ultimate death. Id. at ¶¶34-35.

## II. MOTION TO DISMISS

The defendant asks the court to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 4. ADT argues that it fulfilled its contractual obligation to Mrs. Weinstock; it did not contract to diagnose her over the telephone, only to contact her if the alarm was activated. Id. at 7. ADT contends that the plaintiff's claims amount to an assertion that ADT had a duty to "override" Mrs. Weinstock's repeated assertions that she was fine. Id. at 8.

ADT further asserts that even if it did fail to fulfill its contractual obligations to Mrs. Weinstock, she contractually stipulated to $250 in damages. Id. at 9. (The complaint seeks compensatory damages for both economic and non-economic losses, pecuniary damages, punitive damages, and fees and costs. Dkt. No. 1 at 13.)

ADT argues that the plaintiff's tort claims must fail because ADT had no common-law duty of care to Mrs. Weinstock. Dkt. No. 4 at 14. ADT posits that the plaintiff's consumer misrepresentation claim fails for a variety of reasons. And finally, ADT states that punitive damages are not available, due to a lack of common-law duty and a failure to plead "outrageous" conduct. Id. at 21.

4

## III.   STANDARD FOR MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must state a claim for relief that is plausible on its face." Lodholtz v. York Risk Servs. Group, Inc., 778 F.3d 635, 639 (7th Cir. 2015) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The court "draw[s] all reasonable inferences and facts in favor of the nonmovant," but the court "need not accept as true any legal assertions." Id. (citing Vesely v. Armslist LLC, 762 F.3d 661, 664-65 (7th Cir. 2014)).

"To state a plausible claim, a plaintiff is not, however, required to plead specific or detailed facts." Modovi Dairy Sys., Inc. Empl. Benefit Plan v. Blue Cross and Blue Shield of Wisconsin, No. 15-CV-826, 2016 WL 109965 (E.D. Wis. Jan. 8, 2016) (citing Erickson v. Pardus, 551 U.S. 89, 93 (2007)). "'[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" Alam v. Miller Brewing Co., 709 F.3d 662, 666 (7th Cir. 2013) (quoting Twombly, 550 U.S. at 556).

## IV.   ANALYSIS

> A.   *The court will not consider two of the three attachments to the defendant's brief in support of the motion to dismiss.*

The first basis for dismissal that defendant raises is its argument that the plaintiff cannot state a claim for breach of contract, because ADT fulfilled

5

its contractual obligations. Dkt. No. 4 at 7-9. In support of this argument, the defendant asks the court to review the contract between the parties, Dkt. No. 4-1; the transcript of the emergency phone call, Dkt. No. 4-3; and the audio recording of the phone call, Dkt. No. 5, all of which the defendant filed in support of the motion.

As discussed above, a court does not decide the substance of a plaintiff's claims in the context of a motion to dismiss. "A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. Dismissal of an action under this motion is warranted if the plaintiff can prove no set of facts in support of its claim that would entitle it to relief." Gen. Elec. Cap. Corp. v. Lease Res. Corp., 128 F.3d 1074, 1080 (7th Cir. 1997) (citations omitted). "In response to an ordinary 12(b)(6) motion, a court simply examines the allegations in the complaint to determine whether they pass muster." Id. (citation omitted). "If a district court considers matters outside the pleadings, our procedural rules require that 'the motion shall be treated as one for summary judgment' under Fed. R. Civ. P. 56." Id. (quoting Fed. R. Civ. P. 12(b)).

There is, however, one exception to the requirement that if a judge is going to consider outside matters, the judge must convert the motion to dismiss to a motion for summary judgment. In Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002), the Seventh Circuit held that in a case in which the plaintiff had attached a document to the complaint, that document "became a part of [the complaint] for all purposes," and thus that "the judge could

6

consider it in deciding the motion to dismiss without having to convert the motion to one for summary judgment." (Citing Fed. R. Civ. P. 10(c); Beanstalk Group, Inc. v. AM Gen. Corp., 283 F.3d 856, 858 (7th Cir. 2002)). While the Tierney court did not precisely define the contours of this exception, it posited that "perhaps [the exception] is or should be limited to cases in which the suit is on a contract or the plaintiff, if he has not attached, has at least quoted from, the document later submitted by the defendant." Id. at 739. Lower courts have determined that the Tierney "rule allows matters outside the pleadings to be considered if they were referred to in the complaint and central to the plaintiff's claim." Verfuerth v. Orion Energy Sys., Inc., 65 F. Supp. 3d 640, 649 (E.D. Wis. 2014). See also City of Sterling Heights Police & Fire Ret. Sys. v. Kohl's Corp., No. 13-C-1159, 2015 WL 1478565, at *1 (E.D. Wis. Mar. 31, 2015) ("Documents submitted with a motion to dismiss may be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to a claim."). "This rule prevents parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents to the complaint." Id. (citing 188 LLC v. Trinity Indus., Inc., 300 F.3d 730, at 735 (7th Cir. 2002)). "The exception is narrow; it is aimed at situations in which a plaintiff quotes from a document or the case requires interpretation of an unattached contract, for instance." Id. (citing Tierney, 304 F.3d at 738).

The plaintiffs did not attach to the complaint any of the three pieces of evidence that the defendant filed in support of the motion to dismiss. The complaint does, however, quote from the contract. For that reason, the court

7

concludes that, under the Tierney rule, it can consider the contract when considering the defendant's motion to dismiss, and that doing so does not require the court to convert the motion to dismiss to a motion for summary judgment.

Neither the audio recording of the conversation nor the transcript fall under the exception defined in Tierney. For that reason, the court will not consider those two pieces of evidence in deciding the motion to dismiss.

In its motion to dismiss, the defendant makes an alternative motion for summary judgment on the breach of contract claim. Dkt. No. 3. The court declines to exercise its discretion to convert the defendant's motion to dismiss into a motion for summary judgment. Instead, after this order issues and the defendant has filed its answer, the court will hold a Rule 16 conference and issue a scheduling order, which will include deadlines for filing dispositive motions.

B.  *The plaintiffs have sufficiently pleaded a claim for breach of contract.*

In Count I of the complaint, the plaintiffs allege that ADT breached its contract with Mrs. Weinstock. Dkt. No. 1 at 8. Under Wisconsin law, a plaintiff must demonstrate three elements in order to prove a breach of contract claim: (1) that a valid contract exists; (2) that the defendant breached the contract; and (3) that damages stemmed from that breach. Matthews v. Wisconsin Energy Corp., 534 F.3d 547, 553 (7th Cir. 2008) (citing N.W. Motor Car, Inc. v. Pope, 187 N.W. 2d 200 (Wis. 1971)).

Case 2:15-cv-01391-PP   Filed 07/07/16   Page 8 of 27   Document 10

On January 14, 2013, the parties entered into the contract (the defendant does not argue that the contract was invalid). Dkt. No. 4-1 at 4. The plaintiffs allege that ADT breached that contract by failing to contact local emergency personal and by failing to contact Mrs. Weinstock's emergency contacts after the December 4, 2014 conversation with Mrs. Weinstock. Dkt. No. 1 at ¶¶39-45.

The contract provided that ADT, upon receiving an alarm notification from Mrs. Weinstock's system, would contact Mrs. Weinstock. Dkt. No. 4-1 at 5. It further provided that if ADT did not reach Mrs. Weinstock or did not determine that it was a "false alarm," ADT would "endeavor to notify the responding authority and/or other Emergency Contact(s)." Id. The plaintiffs alleged that based on this language, they expected that if Mrs. Weinstock pressed the alarm button, "an experienced, trained emergency medical dispatcher ("EMD") would contact Mrs. Weinstock and then at a minimum call [one of Mrs. Weinstock's emergency contacts]." Dkt. No. 1 at ¶15. The plaintiffs further allege that the only exception to this protocol "would be if the EMD determined that the alarm was *in fact* false, a determination that at a minimum requires proper emergency medical dispatch training to make." Id. The plaintiffs allege that while ADT did contact Mrs. Weinstock on December 4, the EMD did not ensure that the alarm was false, and as a result, was contractually obligated to contact her emergency contacts—which it did not do. Id. at ¶¶19-20.

Case 2:15-cv-01391-PP   Filed 07/07/16   Page 9 of 27   Document 10

In its brief in support of the motion to dismiss, the defendant disagrees with the plaintiffs' interpretation of the requirements of the contract. Dkt. No. 4 at 8-9. The defendant argues that the language of the contract did not require the EMD to diagnose Mrs. Weinstock's symptoms over the phone, or to determine whether the alarm was false. Id. at 8. The defendant also raises the question of what the contract meant by referring to whether an alarm was "in fact false." Id.

The court will deny the defendant's motion to dismiss the breach of contract claim. The plaintiffs have alleged that there was a valid contract, that the defendant breached its duty under that contract, and that Mrs. Weinstock suffered damages as a result. The issues the defendant raises in the motion to dismiss may be appropriate for determination at summary judgment, or for determination by a finder of fact at a trial, but they are not relevant at the pleadings stage.

The defendant also argues that the court should interpret the contract to limit the plaintiffs' contractual damages to $250. Dkt. No. 4 at 9-13. In support of its argument, the defendant cites cases from other jurisdictions. Id. at 13. Some of these courts appear to have granted Rule 12(b)(6) motions on the limitation-of-damages issue; others appear to have considered the issue in the context of a motion for summary judgment. This court believes that the question of whether any recovery under the contract should be limited to $250 is a question for determination at the summary judgment stage, not at the pleadings stage.

For these reasons, the court will deny the motion to dismiss Count I.

C.    *Although the plaintiffs' have attempted to plead a claim for common-law negligence, the claim does not exist independently of the parties' contract and the court will dismiss Count II.*

In Count II of the complaint, the plaintiffs allege that the defendant was negligent. Dkt. No. 1 at 9. Specifically, they allege that the defendant failed to ensure that the alarm was "in fact false," failed to properly contact medical personnel, failed to contact Mrs. Weinstock's emergency contacts, failed to recognize the signs and symptoms of a stroke, failed to conduct a proper stroke assessment, and failed to recognize that Mrs. Weinstock needed immediate medical assistance. Id. The plaintiffs argue that these failures caused Mrs. Weinstock to suffer injury, including death.

"Whether [a] complaint states a claim for common-law negligence depends on whether [the plaintiffs] sufficiently pled facts, which if proven true, would establish all four required elements of an actionable negligence claim." Nicholas v. Progressive N. Ins. Co., 308 Wis. 2d 17, 27 (2008) (citing Hoida, Inc. v. M&I Midstate Bank, 291 Wis. 2d 283, 302-03 (2006)). The four elements of Wisconsin's common-law negligence cause of action are: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached that duty; (3) the defendant's breach caused the plaintiff's injury; and (4) the breach resulted in actual losses or damages. Id.

The plaintiffs allege that by entering into a valid contract, Dkt. No. 4-1, ADT owed a duty to the plaintiff. They allege that the defendant breached that duty in the ways described above, and allege that as a result of these breaches,

11

Mrs. Weinstock did not receive appropriate medical attention, which ultimately led to her death and the resulting losses and damages. On its face, then, the complaint appears to state a valid claim for common-law negligence.

Under Wisconsin law, however, "'there must be a duty existing independently of the performance of the contract for a cause of action in tort to exist.'" Greenberg v. Stewart Title Guar. Co., 171 Wis. 2d 485, 495 (1992) (quoting and reaffirming Landwehr v. Citizens Trust Co., 110 Wis. 2d 716, 723 (1983), which explained the holding of Colton v. Foulkes, 259 Wis. 142 (1951)). See also Madison Newspapers, Inc. v. Pinkerton's Inc., 200 Wis. 2d 468, 475-76 (1996) ("In a more recent case, the court again cautioned that Colton should not be read as weakening the proposition that, for there to be a cause of action in tort between parties to a contract, the plaintiff must show the existence of a duty existing independently of the performance of the contract.") (citing Greenberg, 171 Wis. 2d at 795 (internal quotation marks omitted)). When no "independent duty" exists, district courts will dismiss the claims. See Miller v. Vonage America, Inc., No. 14-CV-379, 2015 WL 59361, at *6-7 (E.D. Wis. Jan. 5, 2015) (citing Madison Newspapers, 200 Wis. 2d 468; Landwehr, 110 Wis. 2d 716; and Colton, 259 Wis. 142).

In this case, whatever duty ADT and the EMD owed to Mrs. Weinstock existed only because she entered into the contract with ADT. Dkt. No. 4-1. Although the plaintiffs attempted to plead a claim for common-law negligence, as a matter of law in Wisconsin, that negligence claim does not exist but for the contract. Therefore, the plaintiffs do not have an independent claim for

12

negligence, and the court will grant the defendant's motion to dismiss Count II of the complaint.

        D.      *Although the plaintiffs have attempted to plead a claim for negligent hiring, supervising, and training, the claim does not exist independently of the parties' contract and the court will dismiss Count III.*

The plaintiffs' third cause of action alleges a common-law claim for negligent hiring, training or supervision. Dkt. No. 1 at 10. In 1998, the Supreme Court of Wisconsin determined "that the tort of negligent hiring, training, or supervising is a valid claim in Wisconsin." Miller v. Wal-Mart Stores, Inc., 219 Wis. 2d 250, 257 (Wis. 1998). To prove negligent hiring,

> the plaintiff must show that the employer has a duty of care, that the employer breached that duty, that the act or omission of the employee was a cause-in-fact of the plaintiff's injury, and that the act or omission of the employer was a cause-in-fact of the wrongful act of the employee.

Id. at 267-68. A finding of liability for negligent hiring must "not contravene public policy considerations." Id. at 268. Therefore, a claim for "negligent supervision requires a more specific finding" than a claim for common-law negligence. Hansen v. Texas Roadhouse, Inc., 345 Wis. 2d 669, 686 (Wis. Ct. App. 2012).

The plaintiffs allege that "ADT owed a duty of care to its customers, including[] Mrs. Weinstock." Dkt. No. 1 at ¶53. According to the plaintiffs, ADT breached that duty by not properly training the EMD. That failure caused the EMD's breach. The plaintiffs allege that the EMD did not use reasonable care, because the EMD failed to render appropriate services to Mrs. Weinstock. The

plaintiffs assert that the EMD's breach resulted in Mrs. Weinstock not receiving timely medical services, which resulted in Mrs. Weinstock's death, and in financial and emotional damages to Mrs. Weinstock and her family. Id. at ¶¶53-59.

Negligent hiring and training, like general common-law negligence, is an action in tort, and as the court already has discussed in dismissing Count II, the defendant must owe a duty to the plaintiff that is independent from a contract. See Miller, No. 2015 WL 59361; Madison Newspapers, 200 Wis. 2d 468; Greenberg, 171 Wis. 2d 485; Landwehr, 110 Wis. 2d 716; Colton, 259 Wis. 142. Any duty to hire and train that ADT and the EMD may have owed to Mrs. Weinstock arose out of the contract with ADT. Dkt. No. 4-1. Because this tort claim, like the common-law negligence claim, would not exist but for the contract, the plaintiffs do not have an independent claim for negligent hiring, training or supervising.

The plaintiffs point to Chapman ex rel. Chapman Serv. Cas. Ins. Co., 35 F. Supp. 2d 699, 706 (E.D. Wis. 1999), for the proposition that negligent hiring exists independent of the contract. But the Chapman court noted:

> Tort claims alleging negligent hiring, training or supervision do not premise liability solely on the negligence of the employee . . . under agency principles, for which the question of who hired whom may be more important. Rather, liability under this claim flows from the negligent acts or omissions of the employer itself, *under the general analysis of duty and foreseeability in Wisconsin negligence law*.

(citing Miller v. Wal-Mart Stores, Inc., 219 Wis. 2d 250, 260-61 (Wis. 1998))

(emphasis added). Negligent hiring is based in common-law negligence. The

14

plaintiffs cannot sustain a claim for common-law negligence, because the defendant's duty to the plaintiff does not exist independent of the parties' contract. Therefore, the plaintiffs cannot sustain a tort cause of action for negligent hiring, training, or supervising.

The court will grant the defendant's motion to dismiss Count III of the complaint.

> E. *The plaintiffs have sufficiently pleaded a claim for fraudulent misrepresentation under Wis. Stat. § 100.18.*

The plaintiffs' final claim is for fraudulent misrepresentation under Wis. Stat. §100.18. Wisconsin law prohibits fraudulent representations. Wis. Stat. §100.18.

> No person . . . with intent to sell . . . any . . . service . . . or with intent to induce the public in any manner to enter into a contract . . . relating to the sale . . . of any . . . service, shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state . . . an advertisement . . . or representation of any kind . . . relating to such . . . sale . . . of such . . . service . . ., which advertisement . . . or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Wis. Stat. §100.18(1).

"To prevail on" a claim under this statute, "the plaintiff must prove three elements." K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc., 301 Wis. 2d 109, 121 (2007) (citing Tietsworth v. Harley-Davidson, Inc., 270 Wis. 2d 146 (2004)). First, the plaintiff must show that the defendant made a representation to the public "with the intent to induce an obligation." Id. at 121-22 (citation

15

omitted). Second, the plaintiff must show "that the representation was untrue, deceptive or misleading." Id. (citation omitted). Third, the plaintiff must show that the representation caused him or her to suffer "a pecuniary loss." Id. (citation omitted). The Wisconsin Supreme Court has held "that plaintiffs in §100.18 do not have to demonstrate reasonable reliance as an element of the statutory claim." Novell v. Migliaccio, 309 Wis. 2d 132, 151 (2008) (citing K&S Tool, 301 Wis. 2d at ¶36).

The plaintiffs allege that "ADT represented to the public that it employed 'trained professionals' as EMDs" who "would deliver a fast and appropriate response to an alarm, including notifying emergency medical personnel and/or contacting emergency contacts." Dkt. No. 1 at ¶62. They argue that ADT made the representation "with the intent to induce the public to enter into a contract with ADT for ADT's medical alert system." Id. at ¶63. The plaintiffs assert that this representation was "untrue, deceptive, and misleading because the EMDs employed by ADT were not properly trained professionals," and because ADT did not "deliver an appropriate fast response to a medical emergency by contacting emergency medical personnel or by contacting the designated emergency contact[s]." Id. at ¶65. They argue that not only did the defendant's violation induce the plaintiffs to enter into a contract with ADT, but that the alleged violation resulted in pecuniary damages. Id. at ¶67.

The defendant responds, "ADT's alleged representation that it employed 'trained professionals' is merely a vague expression of puffery opinion," and therefore is not actionable under this statute. Dkt. No. 4 at 16-17. They argue

16

that "trained professionals" is a common advertising term capable of different interpretations. Id. at 16. They assert that calling one's employees "trained professionals" is "a generic advertising statement used across countless industries to describe their workforce," and that because "trained professionals" is a subjective term, the plaintiffs cannot prove that it was false. Id. at 17.

The defendant is correct that "mere commercial 'puffery'" is "legally insufficient to support a claim under the statute. Courts have defined puffery as 'the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined.'" Tietsworth v. Harley-Davidson, Inc., 270 Wis. 2d 146, 171 (Wis. 2004) (citing State v. Amer. TV & Appliance of Madison, Inc., 146 Wis. 2d 292, 301-02 (Wis. 1988)).

"Exaggerations of this sort do not subject the speaker to liability under Wis. Stat. §100.18 because they convey only the seller's opinion and are 'not capable of being substantiated or refuted.'" United Concrete & Construction, Inc., 349 Wis. 2d 587, 605 (Wis. 2013) (quoting Tietsworth, 270 Wis. 2d at ¶44). Section 100.18 requires the defendant to make a "misrepresentation of fact." Id. at 607 (emphasis and citation omitted). "This is so because a salesperson who simply declares that his product is the 'best' or the like, is not representing a fact at all, let alone misrepresenting one. Rather he is merely delivering a nebulous, abstract, highly generalized pitch." Id. (emphasis

omitted). A statement is not puffery if it is "a specific, factual statement." Id. (emphasis omitted).

The question of whether the EMDs were "trained," and whether they were "professionals," are questions of fact to be determined by a fact-finder. At the pleadings stage, it is not the court's role to determine whether the phrase "trained professionals" meets the definition of "puffery" under Wisconsin law. And the question of whether any reasonable person would rely on the words to assume that the defendant actually did employ people who were trained, and people who were "professionals," is a question to be determined either at summary judgment or at trial. At this point, the plaintiffs have sufficiently alleged that the defendant made a factual representation, intended to induce people to use its services, and that the representation was untrue or misleading and resulted in damages.

The defendant also argues that the contract's "merger clause" prohibits the plaintiff from alleging "reliance on any alleged pre-contractual misrepresentations." Dkt. No. 4 at 17. As the defendant notes, "reliance" is not an element of fraudulent misrepresentation under Wis. Stat. §100.18. See Novell v. Migliaccio, 309 Wis. 2d 132, 151 (2008) (citing K&S Tool, 301 Wis. 2d at ¶36). But, in order to prove a pecuniary loss, a court may consider the "reasonableness of a plaintiff's reliance." Id. (internal quotation marks and citation omitted). "Reliance is an aspect of the third element, whether a representation caused the plaintiff's pecuniary loss." Id. (citations omitted).

The contract between the parties states:

18

> By signing [the contract] you agree that you are not relying on our advice or advertisements. You agree that you and we are not bound by any representation, promise, condition, inducement, or warranty, express or implied, that is not included in writing in this agreement. The terms and conditions of this agreement apply as printed without alteration or qualification, unless a change is approved in writing by our authorized representative. The terms and conditions of this agreement and any acceptance agreement shall govern even if you submitted any other document with inconsistent or additional terms and conditions.

Dkt. No. 4-1 at 7 (changed from all caps). In Wisconsin, courts will "give the integration clause its intended effect" when it is "worded . . . clearly and unmistakably." Peterson v. Cornerstone Property Dev., LLC, 294 Wis. 2d. 800, 820 (Ct. App. 2006). In Peterson, the plaintiff did not "identify the representations that she allege[d] were false," and therefore she could not "now allege false advertising." Id. at 822.

However, a merger, integration, or "'as is' clause is not a complete bar to these causes of action." Grube v. Daun, 173 Wis. 2d 30, 61 (Ct. App. 1992) (citation omitted). These clauses "put the burden upon a buyer to determine the condition of the [service] purchased." Id. "This shifting of the burden, with nothing more, protects a seller and his or her agent from claims premised upon nondisclosure." Id. (citation omitted). When "the seller or his agent has made an *affirmative representation* about some aspect of the [service], the buyer is entitled to rely upon that statement and expect full and fair disclosure of all material facts relating to that aspect of the [service]." Id. (emphasis in original). In that "situation[], the exculpatory clause still may have evidentiary value for

19

the purpose of showing that no representations were relied upon." Id. (citation omitted). Peterson did not alter the Grube holding; in fact, the Peterson court affirmed Grube. See Fricano v. Bank of America NA, --- N.W.2d. ---, 2015 WL 9309194, at *7 (Wis. Ct. App. Dec. 23, 2015) ("[I]n Peterson we affirmed Grube's holding that an 'as is' clause is not a complete bar to misrepresentation claims when the seller makes affirmative misrepresentations.").

Ultimately, whether the plaintiff can establish reliance is a question of fact that a jury should address or that the parties may wish to address through a motion for summary judgment. The parties have not briefed, and it is not the court's role to determine at this stage, the exact nature of and factual circumstances surrounding the alleged affirmative misrepresentations. At this stage, the complaint states a claim for misrepresentation under Wis. Stat. §100.18.

The defendant's final argument focuses on whether or not the plaintiffs have met the federal pleading standards for the fraudulent misrepresentation claim. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A plaintiff must "meet the heightened pleading standards under Fed. R. Civ. P. 9(b)" when alleging that the defendant made false representations. Miller v. Vonage America, Inc., No. 14-CV-379, 2015 WL 59361, at *2 (E.D. Wis. Jan. 5, 2015). The Seventh Circuit "summarized the particularity requirement as

calling for the first paragraph of any newspaper story: 'the who, what, when, where, and how.'" Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 569 (7th Cir. 2012) (citing Windy City Metal Fabricators & Supply, Inc. v. CITY Technology Fin. Servs., Inc., 536 F.3d 663, 668 (7th Cir. 2008)). Courts sometimes may relax the Rule 9 pleading requirements, such as "where the plaintiff lacks access to all facts necessary to detail his claim, and that is most likely to be the case where . . . the plaintiff alleges a fraud against one or more third parties." Corley v. Rosewood Care Center, Inc., 142 F.3d 1041, 1051 (7th Cir. 1998) (collecting cases).

The plaintiffs have sufficiently pleaded "the who, what, when, where, and how" of the alleged fraudulent misrepresentation in this case. They have alleged that ADT, through its "website[,] advertised its medical alert system and . . . marketed and represented its medical alert system to the public, including elderly individuals." Dkt. No. 1 at ¶61. That representation included a statement that ADT "employed 'trained professionals' as EMDs, and that the 'trained professionals' would deliver fast and appropriate response to an alarm." Id. at ¶62. The plaintiffs state that ADT did this "with the intent to induce the public to enter into a contract with ADT for ADT's medical alert system." Id. at ¶63. And they allege that the statements were not true, because the EMDs were not properly trained professionals, and because ADT did not deliver a fast or appropriate response to Mrs. Weinstock. Id. at ¶65. These allegations are sufficient to put ADT on notice of the claim and to allow the

21

parties to gain "access to all facts necessary" to dissect and support the claim through discovery.

For all of the reasons stated above, the court will deny the defendant's motion to dismiss Count IV of the complaint.

F. *The court will deny the defendant's request to limit the plaintiffs' damages for breach of contract. Because the court has dismissed the causes of action based in negligence, the court will deny as moot the defendant's motion to deny punitive damages.*

In addition to asking the court to dismiss the various counts of the complaint, the defendant asks the court to limit the plaintiffs' damages. First, the defendant asserts that, under the terms of the contract, the plaintiffs "agreed to $250 in damages for any alleged failure of ADT's services." Dkt. No. 4 at 9. The contract states:

> It will be extremely difficult to determine the actual damages that may result from our failure to perform duties under this agreement or from the failure of any system or service on any other regard. You agree that we and our agents, employees, subsidiaries, affiliates and parent companies are exempt from liability for any loss, damage, injury or other consequence arising directly or indirectly from the service we provide under this agreement. If it is determined that we . . . are directly or indirectly responsible for any such loss, damage, injury, or other consequence, you agree that damages shall be limited to the greater of $250 or 10% of the monthly service charge you pay under this agreement. These agreed upon damages are not a penalty. They are your sole remedy no matter how the loss . . . is caused, even if caused by our negligence, gross negligence, failure to perform duties under this agreement, strict liability, failure to comply with the requirements of any laws that may apply to us or to you . . . or other fault. At your request, we may assume additional liability by attaching an amendment to this agreement stating the extent of our additional liability and the additional cost to you. You

22

agree that we are no an insurer even if we enter into
any such agreement.

Dkt. No. 4-1 at 6 (changes from all caps). The Supreme Court of Wisconsin "defined exculpatory contracts in <u>Merten v. Nathan</u>, 108 Wis. 2d 205, 210 (1982) as follows: 'contracts which relieve a party from liability for harm caused by his or her own negligence.'" <u>Discount Fabric House of Racine, Inc. v. Wis. Tel. Co.</u>, 117 Wis. 2d 587, 591 (1984).

"It is well-settled that an exculpatory clause may only release claims of negligence; it cannot, under any circumstances—bargained or not—preclude claims based on reckless or intentional conduct." <u>Brooten v. Hickok Rehab. Servs., LLC</u>, 348 Wis. 2d 251, 258 (Ct. App. 2013) (citations omitted)). Such a contract "'will be held to contravene public policy if it is so broad "that it would absolve the defendant from any injury to the plaintiff for any reason."'" <u>Id.</u> (citing <u>Richards v. Richards</u>, 181 Wis. 2d 1007, 1015 (1994) (quoting <u>College Mobile Home Pary & Sales v. Hoffmann</u>, 72 Wis. 2d 514, 521-22 (1976))). The waiver within the exculpatory contract "'must clearly, unambiguously, and unmistakably inform the signer of what is being waived," and "the form, looked at in its entirety, must alert the signer to the nature and significance of what is being signed.'" <u>Id.</u> (quoting <u>Yauger v. Skiing Enters., Inc.</u>, 206 Wis. 2d 76, 84 (Wis. 1996)).

"Exculpatory contracts are not favored by the law because they tend to allow conduct below the acceptable standard of care applicable to the activity. [They] are not, however, automatically void and unenforceable as contrary to public policy. Rather, a court closely examines whether such agreements

23

violate public policy and construes them strictly against the party seeking to rely on them." <u>Richards v. Richards</u>, 181 Wis. 2d 1007, 1015 (Wis. 1994) (citations omitted). To determine whether the contract violates public policy, the court considers "the common sense and common conscience of the community." <u>Id.</u> (citing <u>Merten v. Nathan</u>, 108 Wis. 2d 205, 213 (Wis. 1982)).

A stipulated damages clause is valid if it is reasonable under the circumstances. <u>Rainbow Cnty. Rentals and Retail, Inc. v. Ameritech Pub. Co.</u>, 286 Wis. 2d 170, 186 (2005). A court must determine whether the clause is reasonable under the circumstances by

> [c]onsider[ing] (1) whether the parties intended to provide for damages or for a penalty; (2) whether the injury caused by the breach would be difficult or incapable of accurate estimation at the time of entering into the contract; and (3) whether the stipulated damages are a reasonable forecast of the harm caused by the breach.

<u>Id.</u> at 188 (citing <u>Wassenaar v. Panos</u>, 111 Wis. 2d 518, 529-30 (Wis. 1983)). This is a flexible test that allows the court to "give some factors greater weight than others" and to "look at both the harm anticipated at the time of contract formation and the actual harm at time of breach." <u>Id.</u> (internal quotation marks and citations omitted). A contract is more likely to be exculpatory if it contains "a broad, all-inclusive release form," that seeks "to avoid *all* liability for *death or serious personal injuries* arising from virtually any conduct, including intentional or reckless acts, of the owner or operate." <u>Id.</u> at 192 (emphasis in the original).

24

In this case, the contract contains both exculpatory language and stipulated damages language. The exculpatory portion is clear and unambiguously relieves the defendant from any liability due to negligence, but that portion is no longer relevant, because the court has dismissed the plaintiffs' claims based in negligence. The stipulated damages portion does not automatically relieve the defendant. The analysis described above requires the court to consider the parties' intentions, the nature of the injury, and the estimation of possible future injury. These are factual issues which need to be fleshed out in discovery, and which are appropriate for resolution by a fact-finder.

The defendant also asks the court to find that the plaintiffs' claim for punitive damages is not supported by the allegations in the complaint. Dkt. No. 4 at 21. "Where it is clear from the allegations of the complaint that a plaintiff is not entitled to punitive damages, the claim for such relief should be dismissed." Cent. Brown Cnty. Water Auth. v. Consoer, Townsend, Envirodyne, Inc., No. 09-C-131, 2011 WL 5040453, at *6 (E.D. Wis. Oct. 21, 2011) (citing Maciosek v. Blue Cross & Blue Shield United of Wisconsin, 930 F.2d 536, 540 (7th Cir. 1991)).

"Under Wisconsin law, punitive damages are not available as a remedy for a breach of contract." Dry Dock, LLC v. Godfrey Conveyor Co., Inc., 717 F. Supp. 2d 825, 839 (W.D. Wis. 2010) (citing Weiss v. United Fire & Cas. Co., 197 Wis. 2d 365, 393 (Wis. 1995)). See also Cent. Brown Cnty. Water Auth., 2011 WL 5040453, at *6 ("Under Wisconsin law, punitive damages are not

25

available as a remedy in breach of contract actions."). "To warrant consideration of punitive damages in cases where they are available, the defendant's conduct must be more than merely negligent." Id. (citing Brown v. Maxey, 124 Wis. 2d 426, 432 (1985)). The plaintiffs have not asked to recover punitive damages in Count I—Breach of Contract—so the defendant's request does not apply to Count I.

But "under Wisconsin law, punitive damages may be awarded for fraudulent misrepresentation." Cadek v. Great Lakes Dragaway, Inc., 58 F.3d 1209, 1212 (7th Cir. 1995) (citing Jeffers v. Nysse, 98 Wis. 2d 543 (1980)). The defendant, without support, states in a footnote that "Wisconsin case law indicates that a party has not yet been able to recover for punitive damages based on a claim of misrepresentation under Wis. Stat. 100.18(1)." Dkt. No. 4 at 21 n.7. Even if it is true that, to date, no party has recovered punitive damages for fraudulent misrepresentation, that is not a basis for this court to determine at the pleadings stage that the plaintiffs are prohibited from seeking such damages, and the court declines to do so.

## V.     CONCLUSION

The court **GRANTS IN PART AND DENIES IN PART** the defendant's motion to dismiss (Dkt. No. 3). The court **DENIES** the defendant's motion to dismiss Count I and Count IV. The court **GRANTS** the defendant's motion to

dismiss Counts II and III, and **DISMISSES** those claims.

Dated in Milwaukee, Wisconsin this 7th day of July, 2016.


BY THE COURT:

HON. PAMELA PEPPER
United States District Judge